UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL KASPRZYCKI,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:07-cv-00071 (VLB) |
| JAMES DICARLO, THOMAS HABIB, | : | |
| THOMAS MCLOUGHLIN, | : | November 4, 2008 |
| JAMES MERRITHEW, | : | |
| MARK GENOVESE, | : | |
| EDWARD REMINGTON, | : | |
| RICHARD DIANA AND | : | |
| ROBERT ONOFRIO, | : | |
|     Defendants | : | |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #38]

This is an action for damages brought pursuant to 42 U.S.C. § 1983. The plaintiff, Michael Kasprzycki, a former North Haven Police Officer, brings this case alleging violations of his constitutional rights arising out of statements he made in an internal affairs investigation. This case is brought against the following employees of the North Haven Police Department in their individual capacities only: James DiCarlo, Chief of Police; Thomas Habib, Deputy Chief of Police; Thomas McLoughlin, Captain; James Merrithew, Captain; Mark Genovese, Lieutenant; Edward Remington, Lieutenant; Richard Dana, Sergeant; and Robert Onofrio, Sergeant (collectively, "Defendants"). Defendants have filed the within motion for summary judgment arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

1

Kasprzycki alleges: 1) that his First Amendment rights were violated by retaliatory actions taken against him for exercising his right to freedom of speech, 2) that his rights to equal protection under the Fourteenth Amendment were violated when he was disciplined for being late to work and for use of his cellular phone while at work, and 3) that his rights to substantive due process under the Fourteenth Amendment were violated by the actions of the Defendants.

## FACTS

The examination of depositions, affidavits, interdepartmental memoranda, and letters disclosed the following undisputed material facts:

### A. Events Before the Internal Investigation Statement

Kasprzycki joined the department as a patrol officer on or about May 19, 1989. In May of 1990, Kasprzycki was involved in an incident where a department vehicle was damaged. In October of 1992, he was given a letter of reprimand for violating the department's pursuit/response policy by driving through a red light too quickly. Prior to this reprimand he had been given verbal warnings for driving too fast. In December 1993, his unsafe operation of department vehicles was addressed again. In April of 1996, his supervisors informed him that the quality of his reports was unacceptable. In January of 1998, he was given a letter of reprimand for two instances of insufficient report writing and incomplete investigations. In June of 1998, he was suspended for three days for violating the department's pursuit/response policy by leaving his assigned patrol area without authorization. In January of 1999, he was given a suspension for failing to attend

a training session. In 1999 and 2000, he received three verbal warnings for being late to work. In November of 2000, he was again involved in an incident where a department vehicle was damaged. In October of 2001, he was suspended for three days for falling asleep on duty on two separate occasions. In that same month he was suspended for three more days for leaving his assigned patrol area and entering a café. In that same month he received a letter of reprimand for neglect of duty for failure to dispatch an ambulance to a medical emergency. In May of 2003, he was involved in an incident where a department vehicle was damaged. In February of 2004, he was given a written reminder of the department's cellular phone policy. In March of 2005, he was again suspended for one day for failing to dispatch personnel to a medical emergency.

### B. The Internal Investigation Statement

On April 23, 2005, the mother of a prisoner informed Kasprzycki that $25.00 was missing from her son's backpack after it was in police custody. Kasprzycki reported this incident to his supervisor and shortly thereafter received a letter directing him to give a statement in an internal investigation into the missing funds. On April 26, 2005, Kasprzycki made a statement describing the incident to the officer conducting the investigation, Captain Merrithew. The investigation subsequently determined that two of Kasprzycki's fellow officers had failed to follow department procedures regarding the personal property of a prisoner and on September 12, 2005, Chief DiCarlo sent letters of reprimand to the police officers found to be at fault.

## C. Events After the Internal Investigation Statement

In June of 2005, Kasprzycki received a one-day suspension for using his cellular phone during an investigation. In September of 2005, Kasprzycki was suspended for two days for using his cellular phone while directing traffic. In October of 2005, Kasprzycki was internally charged with conduct unbecoming and neglect of duty in conjunction with an incident at Federal Express and was suspended by the Board of Police Commissioners for thirty days pursuant to an agreement between Kasprzycki and the department. On April 13, 2006, Kasprzycki was required to write an explanatory memorandum for being late to work. On July 3, 2006, he was suspended for one day for arriving late to his assignment at Stop & Shop. On September 7, 2006, Kasprzycki was placed on administrative leave in conjunction with an incident at Stowaway Storage. On September 26, 2006, before his hearing before the Board of Commissioners, Kasprzycki resigned.

On November 10, 2006, after unsuccessfully attempting to collect a debt from an acquaintance and learning that the right front tire of his truck had been punctured, Kasprzycki made a comment about shooting himself. This statement was reported to the North Haven Police Department by Kasprzycki's mother and the department decided that Kasprzycki should be brought, involuntarily, to a hospital for a psychiatric evaluation. Officers then found Kasprzycki driving on a public thoroughfare, pulled him over, and brought him to the hospital.

Kasprzycki subsequently brought this action on January 16, 2007,

asserting a deprivation of his constitutional rights to speech, equal protection, and due process.

## STANDARD

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party bears the burden of showing that no genuine issues exist as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

If the moving party meets its burden of proof, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the non-moving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir.

5

2002). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

## DISCUSSION

### A. First Amendment Claim

The Defendants argue that Kasprzycki did not speak as a citizen while giving his statement during the internal investigation and therefore his statement is not protected by the First Amendment. Although Kasprzycki argues that the speech was on a matter of public concern, he does not address this argument.

The Second Circuit Court of Appeals has adopted a three prong test to establish a First Amendment retaliation claim: "plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a

6

matter of public concern; (2) they suffered an adverse employment action;[1] and (3) the speech was a motivating factor in the adverse employment decision." Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006). "If a plaintiff makes this required showing, defendants may nevertheless escape liability if they can demonstrate that . . . the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech." Id.

In Garcetti v. Cebalos, 547 U.S. 410, 413 (2006), the Supreme Court addressed the First Amendment retaliation claim of a former deputy district attorney. In that case, the plaintiff prepared a memorandum to his supervisor advising that an action be dismissed due to governmental misconduct. Id. at 414. The Supreme Court held that the First Amendment claim failed as a matter of law because "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 421. Explaining this outcome, the Court wrote that:

> When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.

---

[1] The Defendants do not contest that Kasprzycki suffered adverse employment actions. Also, it should be noted that for the purposes of this claim, this Court does not consider the events of November 10, 2006 because they occurred after Kasprzycki resigned.

7

Id. at 423. This is not to say that public employees leave their First Amendment rights at the doorstep to their workplace: "[e]mployees in some cases may receive First Amendment protection for expressions made at work. Many citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like 'any member of the general public,' to hold that all speech within the office is automatically exposed to restriction." Id. at 420-421 (internal citations omitted). Moreover, the Supreme Court held that the fact that the plaintiff spoke on a topic which concerns the subject matter of their employment is also nondispositive. Id. at 421.

Indeed, in Barclay v. Michalski, 451 F.Supp.2d 386, 390 (D.Conn. 2006), a nurse at a state mental health hospital made complaints regarding other employees using restraints excessively and sleeping on duty. Although employees at the hospital were generally required by "work rules" to report misconduct, the plaintiff testified that she had not received any training regarding the rules and similar complaints had been ignored by the hospital in the past. Id. at 395-396. In Barclay, the court held that application of Garcetti was inappropriate because the defense had failed to establish "incontrovertibly" that the plaintiff made her complaints as part of her established duties. Id. at 396.

In the case at bar, Kasprzycki claims the retaliation occurred in response to his statement at an internal investigation. The record incontrovertibly shows that Kasprzycki made this statement because he received a letter from his employer ordering him to do so. Furthermore, there is no information on record to indicate that

Kasprzycki's statement consisted of anything other than a factual description of his interactions with the prisoner's mother on April 23, 2005.

Unlike the plaintiff in Barclay, Kasprzycki was compelled by his employer to convey the facts of the incident in an internal investigation. Had Kasprzycki sought to correct some perceived pattern of departmental misconduct in a different forum, that speech might very well have been protected; however, the forum of the internal investigation is one that "owes its existence to a public employee's professional responsibilities." Garcetti, 547 U.S. at 411. Consequently, Kasprzycki's speech is placed outside the gambit of First Amendment protection and summary judgment must be granted on this claim.

Even if Kasprzycki's speech were protected by the First Amendment, the Defendants argue that the claims against all the Defendants save Merrithew and DiCarlo are unsustainable because there is no evidence that they knew of the speech. In Gordon v. Marquis, 3:03-cv-01244 (AWT), 2007 WL 987553, at *10 (D. Conn., Mar. 31, 2007), the court granted summary judgment and dismissed the case after finding that the plaintiff, a police officer in the City of Hartford who asserted a claim of First Amendment retaliation, did not show that the employees responsible for various adverse employment actions had knowledge of the plaintiff's protected speech. The court stated that "[a] causal connection cannot exist if the person allegedly responsible for the adverse action had no knowledge of the protected activity." Id.; see also Golub v. City of New York, 334 F.Supp.2d 260, 268 (S.D.N.Y. 2004) (holding that "temporal proximity between [the alleged retaliator's] knowledge

of a protected activity and an adverse employment action may be sufficient to establish causal connection or retaliatory motive in some cases"); Kalb v. Wood, 38 F.Supp.2d 260, 268 (S.D.N.Y. 1999) (finding no causal connection between filing lawsuit against the town and denial of compensation benefits when the manager responsible for the adverse employment action was not aware of the lawsuit).

It is clear from the record that Merrithew was aware of Kasprzycki's statement in the internal investigation, as he was the officer conducting those proceedings. Also, drawing all inferences in favor of Kasprzycki, the letters of reprimand issued by Chief DiCarlo on September 12, 2005 indicate that he was aware of the proceedings. Consequently, a jury could reasonably conclude that Chief DiCarlo had knowledge of Kasprzycki's statement. However, as to the reminding Defendants, Kasprzycki has not submitted evidence which would indicate that they were aware of Kasprzycki's statement to the internal investigation. Indeed, Kasprzycki fails to even address this argument in his response. Even if Kasprzycki's statement constituted protected speech, which the Court has ruled it does not, without such evidence the remaining Defendants are entitled to summary judgment as a matter of law.

### B. Equal Protection Claim

The Defendants challenge Kasprzycki's equal protection claim on two grounds. First, the Defendants argue that Kasprzycki has failed to identify any individuals who are similarly situated to him. Second, the Defendants argue that Kasprzycki has failed to identify any specific events where other officers were

treated differently, and that they are thus entitled to summary judgment on Kasprzycki's equal protection claim.

Here Kasprzycki proceeds not under the traditional class theory of equal protection, but as a "class of one." Such claims have been recognized by the Supreme Court when the plaintiff is "intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In order to succeed in a class of one claim, "the level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotations omitted). In order to survive a motion for summary judgment, Kasprzycki has an affirmative duty to present evidence establishing a prima facie case that would allow a reasonable jury to find that his position was identical in all material aspects to the position of those to which he compares himself. Nelson, 409 F.3d at 105*;* Albert v. City of Hartford, 529 F.Supp.2d 311, 323 (D.Conn. 2007).

Kasprzycki claims two instances of disparate treatment: namely, that he was the only officer disciplined for cellular phone use and that he was disciplined for being late to work when others were not. In his response to the Defendants' first set of interrogatories the following individuals were identified by Kasprzycki as being similarly situated: Chief of Police DiCarlo, Captain McLoughlin, Captain Merrithew, Lieutenant Remington, Sergeant Onofrio, Sergeant Diana, Detective Hotten, Detective Harton, Officer Ianone, Officer Guidone, Officer Thorpe, Officer Joslyn,

Officer Talarico, Officer Janasko, Officer Girard, and Officer Glenn. Kasprzycki has submitted no evidence of any specific event where these individuals used their cellular phone or were late to work and were not disciplined, nor has he produced any evidence that any of these officers ever engaged in professional misconduct or were ever reprimanded or suspended as he has been.

When considering the sanctions imposed on Kasprzycki for the use of his cellular phone and for being late to work, the disciplinary records of each individual officer are undoubtably material. Kasprzycki has also failed to provide evidence which would indicate that any of the individuals listed above have comparable disciplinary records. Furthermore, even if this Court were to hold that one or more of these individuals were sufficiently similar for Kasprzycki to survive a motion for summary judgment, he has identified no specific events in which there was disparate treatment. Without any similarly situated individuals or any specific events with which to compare the actions of the Defendants, Kasprzycki's claim is fatally incomplete. For these reasons there is no disputed issue of material fact and the Defendants are entitled to summary judgment on Kasprzycki's equal protection claim.

### C. Substantive Due Process Claim

The Court finds that summary judgment must be granted on Kasprzycki's substantive due process claim because it has been abandoned. "Federal Courts may deem a claim abandoned when a party moves of summary judgment on one ground and the party opposing summary judgment fails to address the argument in any

way." Ludwiczak v. Hitachi Capital Am. Corp., 528 F.Supp.2d 48, 59 (D. Conn. 2007) (quoting Douglas v. City of Waterbury, 494 F.Supp.2d 112, 122 (D. Conn. 2007)). The Defendants moved for summary judgment on the substantive due process claim, setting forth in their memorandum arguments in support of the motion. In his response, Kasprzycki failed to even mention the substantive due process claim. Consequently, the Court finds the claim to have been abandoned. However, even if the claim were not abandoned, the Defendants have put forward two arguments which would entitle them to summary judgment.

First, the Defendants argue that the substantive due process claim is duplicative of a First Amendment retaliation claim. The Supreme Court has held that: "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of 'substantive due process' must be the guide analyzing these claims." Tennebaum v. Williams, 193 F.3d 581, 599 (2d Cir. 1999) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)). Kasprzycki stated in his deposition that his participation in the internal investigation was the sole reason for the disciplinary action and harassment that followed. Consequently, these events must be analyzed under the elements of a First Amendment retaliation claim and not the more general theory of substantive due process.

Second, the Defendants argue that, given the extensive disciplinary history of Kasprzycki, the actions of the Defendants do not arise to the level of "shocking the conscience." It is axiomatic that a violation of substantive due process only

occurs if the actions of the Government "shock the conscience." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2nd Cir. 1973); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 (1998). The Second Circuit has stated that "the protections of substantive due process are available only against egregious conduct." <u>Smith v. Half Hollow Hills</u>, 298 F.3d 168, 173 (2d Cir. 2002). Given Kasprzycki's disciplinary record, detailed extensively in this opinion and in the record, the few suspensions and even his eventual resignation fall far short of this standard.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is GRANTED as to each and every claim. The clerk shall terminate this action.

**IT IS SO ORDERED.**

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 4, 2008.